UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

Richard L. Kiser,                     Case No. 3:11 CV 1242

    Plaintiff,                    JUDGE JAMES G. CARR

    v.

                                      <u>OPINION AND ORDER</u>

John Coleman, *et al.*,

    Defendants.

*Pro se* Plaintiff Richard L. Kiser filed the above-captioned action under 42 U.S.C. § 1983 against Oakwood Correctional Facility ("OCF") Warden John Coleman, Ohio Department of Rehabilitation and Correction ("ODRC") Chief Inspector Gary Croft, OCF Institutional Inspector Ed Dunn, OCF Captain Vern Schnipke, OCF Captain Thomas Crutcher, OCF Lieutenant Donald Bowman, OCF Lieutenant Bart Williams, OCF Lieutenant Lennon, OCF Corrections Officer Sherry Oldham, and OCF Corrections Officer Mike Rogers.  In the Complaint, Plaintiff alleges the Defendants retaliated against him for filing grievances, and denied him due process.  He seeks monetary damages.

**I. Background**

Plaintiff, an inmate at OCF, has filed a number of grievances against various corrections officers.  The first grievance he mentioned was filed on March 11, 2011 against Corrections Officer Rogers.  Plaintiff indicated to Captain Crutcher that while he was working his third shift assignment in the E2 unit that evening, he saw Officer Rogers eating a banana in a sexually suggestive manner.

He informed the Captain that Officer Roger was not assigned to the E2 unit that day, but came to the unit anyway to spend time with Officer Oldham. He indicated that Officer Rogers regularly visited the unit when he was assigned to other locations, and reported he believed the officers were involved in a romantic relationship. He claimed this was not appropriate and suggested Captain Crutcher hold the officers accountable for their actions. Both Captain Crutcher and Inspector Dunn cautioned Plaintiff about making unsubstantiated charges against officers, and told him he did not have the status or authority as an inmate to question whether staff members were working in their assigned units.

Plaintiff filed another grievance the following day on March 12, 2011. He informed Captain Schnipke that Officer Olivio kicked on his door and woke him when the officer was conducting his morning inmate check. He indicates this should not have occurred because he worked the third shift and suggested Officer Olivio intended to harass him. He states the same officer later came to his cell and confiscated a light bulb. The light bulb belonged to another inmate and Plaintiff was told it was considered contraband. Plaintiff claims he did not get a conduct report which would have been proper procedure when contraband is taken from an inmate. He asserts that this is a denial of due process. He does not appear to have been disciplined for this offense. Plaintiff claims the light bulb was taken in retaliation for the grievance he filed the previous day.

He filed another grievance on the evening of March 12, 2011. He contends that in light of the sexually suggestive way in which Officer Rogers was eating his banana the night before, he did not feel comfortable being out of his cell around Officer Roger and refused to go to work. Officer Rogers threatened to issue a conduct report to him for refusing to work and place him in segregation. Plaintiff does not state whether he reported for work or remained in his cell. He complained to

-2-

Captain Crutcher that Officer Rogers retaliated against him by threatening to issue a conduct report. Captain Crutcher called the grievance "unwarranted." ECF No. 1 at 7. He filed a formal grievance with Inspector Dunn insisting that Officer Rogers had behaved inappropriately the night before, and emphasized that he was not assigned to unit E2 when the incident with the banana occurred. He insisted Officer Rogers was out of place to spend time with Officer Oldham. Inspector Dunn told him that the job assignments and the personal relationships between the officers were not his concern. He was reminded that he did not have the status or authority to question where officers are assigned. ECF No. 1 Ex. C.

Officer Oldham issued a conduct report to Plaintiff on March 13, 2011. The report was based on an incident which occurred on March 11, 2011 when Plaintiff allegedly slipped coffee under the door of another inmate's cell while he was out performing his third shift work duties. Plaintiff claimed the report was a clear act of retaliation by Officer Oldham. He states the conduct report was dismissed.

Plaintiff filed a grievance against Officer Oldham on March 13, 2011 complaining to Captain Crutcher that she retaliated against him for disclosing her relationship with Officer Rogers. He also informed Captain Crutcher that Officer Rogers was regularly not performing the duties assigned to him. Plaintiff reported that when Officer Oldham was assigned to unit E2 and Officer Rogers was assigned to a different location, Officer Rogers would come to unit E2 and spend time with Officer Oldham. He stated that when Officer Rogers and Officer Oldham both were assigned to unit E2, they would spend time together in the control booth. He further stated that when Officer Rogers was assigned to work with Officer Schaeffer on the floor of unit E2, Officer Rogers spent the evening watching television. Plaintiff then provided the Captain with notes detailing the activities of Officer

Rogers on March 16, 17, 18, and 19. He told the Captain of personal things he claims to have learned from Officer Oldham, including the status of her relationship with her husband. Captain Crutcher responded to Plaintiff that his personal opinions were not required for the operation of OCF. He was told to perform his assigned tasks and remain professional. Plaintiff filed a formal grievance to Inspector Dunn on the Captain's response and was again reminded that he, as an inmate, did not have the authority or status to demand staff members be disciplined or question how or to where they were assigned. ECF No. 1 Ex. E.

Plaintiff filed a grievance against Officer Oldham on April 3, 2011. He stated he was supposed to have 45 minutes after he is done with work to stay in the day room. He indicated he was sitting on his bed getting dressed from his shower that evening when Officer Worley locked him in his cell. He contended that Officer Oldham was responsible for Officer Worley's actions. He asked Captain Crutcher to keep Officer Oldham "out of the position to retaliate against [him]." ECF No. 1 Ex. J. The grievance was denied.

Plaintiff filed another grievance against Officer Oldham on April 14, 2011. He claimed Officer Oldham retaliated against him by filing conduct charges against him earlier that evening. Officer Oldham claimed she observed Officer Rogers walk by Plaintiff in the hallway of unit E2 and call Officer Rogers a "F***ing Idiot." ECF No. 1 Ex. G. She charged Plaintiff with being disrespectful to an officer. Plaintiff indicated in the grievance that his request for Officer Oldham and Officer Roger be kept from assignments that bring them in contact with him have been ignored. Lieutenant Bowman answered the grievance and indicated that Plaintiff had never complained to him about Officer Oldham when the Lieutenant was in the unit. He suggested that the number of grievances Plaintiff filed against Officers Rogers and Oldham indicated that perhaps Plaintiff was

retaliating against the Officers. He recommended that Plaintiff be reclassified as a porter and informed him that the Officers would not be reassigned because the prison was not willing to allow inmates to decide with which officers they would and would not work. In response to the formal grievance Plaintiff filed, Inspector Dunn reminded Plaintiff that he did not have the authority to question work assignments, and held it was purely a disciplinary issue. Plaintiff was found guilty of the infraction by Lieutenant Lennon.

Plaintiff filed another grievance on April 21, 2011 against numerous officers. He contends his requests to work on a different shift have been ignored. He states that his unit manager and a social worker sent emails to the shift supervisors advising them that Plaintiff should not be assigned to work third shift. He indicated that they ignored the advice and Officer Shaeffer still tried to get him up for work. He was told that the issue had been resolved that same day and all unit E2 officers were advised that Plaintiff was no longer assigned to the third shift floor crew.

Another grievance was filed against Officer Oldham on April 27, 2011. Plaintiff contends the inmates in the prison were being evacuated to the basement in response to a tornado warning for the area. He indicated Officer Oldham was assigned to the E2 unit control room. He contends he was told by another inmate that Officer Rogers and Officer Oldham discussed keeping Plaintiff and his cell mate locked in their cell. He states that all cell doors in the unit were unlocked for the evacuation , but the door to his cell would not open. Plaintiff alleges his door would not open from the control booth so it had to be manually unlocked with a key. He believed his door had been locked by Officer Oldham. He complained to the warden and was told to file a grievance so the security footage could be reviewed.

Lieutenant Williams responded to the grievance. He noted that the decision to evacuate was

-5-

made at midnight. At that time, Lieutenant Bowman sent Officer Rogers to unit E1 to assist with that evacuation. He noted that Officer Rogers returned to unit E2 at 12:45 a.m. after the evacuation was over and the inmates were returning to their cells. He concluded that the conversation reported by the other inmate could not have taken place because Officer Rogers was not in the unit after the order to evacuate was given. The Lieutenant contended that when the cell doors were unlocked, Officer Oldham was informed that Plaintiff's door had not opened. He stated that she then went back to the control room to attempt to open it. When it still would not open, the door was unlocked with a key. He indicated "you and your cellie were out of your cell standing in the hall with the other level 3's and 4's approximately 2 minutes before all the level 3's and 4's were evacuated." ECF No. 1 Ex. I.

Plaintiff filed a formal grievance on May 9, 2011 pertaining to the evacuation. He insists that Officer Rogers was still in the unit during the evacuation and accused Lieutenant Williams and Lieutenant Bowman of lying. He further claims that the other inmates were out of their cells 15-20 minutes before he and his cell mate were released. He questions why his door out of all the doors in the unit was unable to be opened using the controls and insists Officers Oldham and Rogers retaliated against him by locking him in. He demanded that Officers Oldham and Roger, and Lieutenants Bowman and Williams be fired.

Plaintiff also filed grievances against Captain Crutcher, and Inspector Dunn for failing to respond favorably to his grievances. He does not provide the result of those grievances.

Finally, Plaintiff filed grievances pertaining to the loss of his eye glasses and his limited access to the typewriter in the law library. He indicates on May 23, 2011 that his eye glasses were either lost or stolen. He was told he would have to pay for a new pair because the state will only pay

-6-

for one pair every four years. He indicates another inmate received glasses paid for by the state in less than 4 years. He claims retaliation. He filed another grievance on June 1, 2011 to complain about the availability of the typewriter. He indicates that the law librarian keeps the printwheel and the ribbon locked in her office. He states she is not at work when he has recreation. He states that this hinders him from doing his legal work.

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III. Analysis

#### A. Parties

Prior to addressing the merits of Plaintiff's claim, the Court notes that many of the Defendants should be dismissed from this action. His claims against Warden Coleman, Chief Inspector Croft, Institutional Inspector Dunn, Captain Schnipke, Captain Crutcher, Lieutenant Bowman, and Lieutenant Williams, are all based on their responses or lack of responses to his grievances. His claim against Lieutenant Lennon is based on his unfavorable ruling at Plaintiff's conduct hearing. Responding to a grievance or otherwise participating in the grievance procedure or in a conduct hearing is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999); *see Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. June 7, 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care"). Because Plaintiff does not have any discernable claims against these Defendants apart from their responses to grievances, they are dismissed from this action.

#### B. Due Process

Plaintiff first claims Officer Olivio denied him due process when he confiscated a light bulb from his cell without following the proper institutional protocol. Officer Olivio, however, is not named as a Defendant in this action and the other Defendants cannot be held liable for his actions. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). There are simply no Defendants against whom this claim can be asserted.

Furthermore, even if Plaintiff had named Officer Olivio as a Defendant in this action, his due process claim would be dismissed. The range of property interests protected by procedural due process is not infinite. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). A property interest generally "must be more than *de minimis* "to receive constitutional protection. *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003); *see e.g., Laney v. Farley*, 501 F.3d 577, 584 (6th Cir. 2007) (finding "a one day in-school suspension to be a *de minimis* deprivation"); *Gillard v. Norris*, 857 F.2d 1095, 1098 (6th Cir. 1988) (finding a police officer's three-day suspension from work to be a *de minimis* deprivation of property not deserving of due process protection). Here, the officer took a light bulb from the Plaintiff which belonged to another inmate. It was not Plaintiff's property, and to the extent Plaintiff claims an interest in it because it was in his possession, that interest was not sufficient to invoke the procedural protections of the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Plaintiff's claim for denial of due process must be dismissed.

### C. Retaliation

Plaintiff asserts numerous claims of retaliation against Officers Rogers and Oldham. To state

a prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

### 1. Protected Conduct

The first element that Plaintiff must establish for his retaliation claim is that he was engaged in conduct protected by the First Amendment. *Id.* at 394–95. Plaintiff claims the Defendants retaliated against him for filing numerous grievances against them. Filing a grievance against prison officials is conduct protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Filing frivolous grievances, however, is not protected conduct. *Hill*, 630 F.3d at 472.

Plaintiff filed numerous grievances against Officers Rogers and Oldham claiming that Officer Rogers was present in unit E2 when he was assigned to work in other units. He claimed Officer Rogers would come to the E2 unit and stay in the control booth with Officer Oldham. He indicated he believed the Officers were engaged in a romantic relationship. One of the grievances detailed the movements of Officer Rogers over a four day period. Another grievance described personal information he had received concerning Officer Oldham's relationship with her husband. He was repeatedly told that he did not have the status or authority, as an inmate, to question whether a corrections officer was in the unit to which he was assigned or whether that officer was properly completing tasks given to him. He was told to complete the work tasks assigned to him and remain professional at all times. One of his grievances objected to the way in which Officer Rogers ate a banana. Plaintiff claimed he found it offensive. He filed a grievances against Officer Oldham for

Officer Worley's actions. Plaintiff even filed grievances against the grievance officers claiming they were not disciplining Officers Rogers and Oldham for being out of place and not performing their duties. He filed grievances asking to have the Officers reassigned to different units or different shifts. He was repeatedly told inmates were not permitted to make employment decisions for corrections officers. These grievances are clearly frivolous. *Cf. Herron*, 203 F.3d at 415 (finding that petitioner's grievances regarding the suspension of his wife's visitation privileges, the termination of his job, and his transfer to a different facility were frivolous). Filing those grievances therefore is not conduct protected by the First Amendment. Plaintiff's retaliation claims fail to state a claim on this basis alone.

### 2. Adverse Action

The second element that Plaintiff must establish for his retaliation claim is that the Defendants took an adverse action against him. *Thaddeus–X*, 175 F.3d at 396. An adverse action is one that is "capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Plaintiff does not have to show actual deterrence. *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus–X*, 175 F.3d at 398. While this element is not an overly difficult one for the Plaintiff to meet, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Id.*

Plaintiff alleges two adverse actions by Rogers and Oldham in his Complaint. First, he states that the officers threatened to issue conduct reports or issued conduct reports to him. Second, he

-11-

claims Officers Oldham and Rogers kept him locked in his cell during a tornado evacuation. In addition, he claims Officer Worley locked him in his cell 45 minutes early. Officer Worley is not a Defendant in this action. He also contends he was denied a free replacement pair of glasses. He does not allege which Defendant, if any, made this decision. The Court therefore will focus on the two actions threatened or carried out by Rogers and Oldham. Receiving a conduct report which could affect parole or result in placement in segregation, as well as being locked in a cell for a tornado evacuation would deter a person of ordinary firmness from exercising the constitutional right to file grievances. *See Thaddeus–X*, 175 F.3d at 396. Plaintiff has alleged an adverse action.

### 3. Motivation for Adverse Action

The third element that Plaintiff must establish for his retaliation claim to survive dismissal is that the adverse action was motivated, at least in part, by his participation in protected conduct. *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). This element addresses whether the Defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct. *Thaddeus–X*, 175 F.3d at 399. If the prisoner can show that the Defendants' adverse actions were at least partially motivated by the prisoner's protected conduct, then the burden shifts to the Defendants to show that they would have taken the same action even absent such protected conduct. *Id*. at 399.

There is no indication in the Complaint that the adverse actions described above were motivated by protected conduct in which Plaintiff engaged. He contends Officer Rogers threatened to give him a conduct report for refusing to work when he would not report for work. He claims that threat of a conduct report was motivated by a grievance he filed against Rogers that same day. First, the Court has already determined that this grievance was frivolous. Moreover, as it was filed that

-12-

same day, there is no indication in the pleading that Officer Rogers was aware of it at the time. It appears Officer Rogers threatened to issue a conduct report to Plaintiff because Plaintiff actually refused to report to work.

Plaintiff claims Officer Oldham issued a conduct report to him because he wrote a grievance to Captain Crutcher complaining that Officer Rogers was not working in the unit to which he had been assigned for the night. Again, because the grievance was frivolous, it was not protected conduct. Furthermore, there is no indication in the Complaint that Oldham was aware that the grievance had been filed, or that it was issued because of the grievance as opposed to Plaintiff's conduct for which it was issued.

Finally, Plaintiff claims that Officers Oldham and Rogers locked his cell door during a tornado evacuation in retaliation for grievances in which he reported their alleged romantic relationship. Because the grievance is frivolous, it is not protected conduct. Moreover, Plaintiff was told by another inmate that he overheard Officers Oldham and Rogers during the evacuation discussing their plan to lock Plaintiff's cell. A supervisor present during the evacuation informed Plaintiff that the alleged conversation between the Officers could not have taken place because Officer Rogers was actually in another unit at the start of the evacuation and did not return until it was over and inmates were returning to their cells. Officer Oldham tried to unlock the door from the control room and when that failed, unlocked it manually with a key. The supervisor reports that Plaintiff and his cellmate were evacuated with their unit. Officer Oldham was in as much danger as the Plaintiff as she was in the unit attempting to unlock the door. There are no allegations in the Complaint to suggest that Officer Oldham and Officer Rogers conspired to keep the cell locked because Plaintiff filed grievances to report their relationship to their supervisor. Plaintiff has failed

to establish a causal connection between his grievances and the alleged retaliation.

Plaintiff is unable to make out a prima facie case for retaliation, and his claim for the same must be dismissed.

### D.  Law Library

Finally, Plaintiff claims the law librarian keeps the typewriter ribbon and print wheel locked in her desk and she is not in the office during his recreation time. He claims this hinders him from doing legal work. The Court construes this as a claim for denial of access to the courts.

Initially, the Court notes that the law librarian is not a Defendant to this action. The individuals named as Defendants have no apparent connection to the law library and no responsibility for maintaining the typewriter. Absent an allegation that they are personally involved in these actions, they cannot be held liable for damages. *Rizzo*, 423 U.S. at 371.

Even if Plaintiff had named the law librarian as a Defendant, he did not state a viable claim for denial of access to the courts. To state a claim for denial of access to the courts, Plaintiff must allege that particular actions of the Defendants prevented him from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an underlying claim, without which a Plaintiff cannot have suffered injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In other words, he must demonstrate "actual injury" by showing that his underlying claim was non-frivolous, and that it was frustrated or impeded by Defendants. *Lewis*, 518 U.S. at 353. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must

be described in the Complaint...." *Christopher*, 536 U.S. at 415.

Here, Plaintiff alleges only in general terms that he does not have adequate access to the typewriter in the library. This is insufficient to state a claim. An inmate cannot establish an actual injury simply by stating his prison's law library or legal assistance program is sub-par in some theoretical sense. *Lewis*, 518 U.S. at 351. The inmate must go one step further and demonstrate that the alleged shortcomings in the library hindered his efforts to pursue a specific legal claim. *Id.* at 353. Plaintiff has not alleged Defendants prevented him from pursuing a particular non-frivolous action. His claim for denial of access to the courts must be dismissed.

### IV. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

S/ JAMES G. CARR
SR. UNITED STATES DISTRICT JUDGE

---

[2]  28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.